# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-02558-SCT

*DELTA AND PINE LAND COMPANY*

*v.*

*REGINALD BURNS*

### CONSOLIDATED WITH
### NO. 2004-IA-02560-SCT

*DELTA AND PINE LAND COMPANY*

*v.*

*CARLOS HARRIS*

### CONSOLIDATED WITH
### NO. 2004-IA-02561-SCT

*DELTA AND PINE LAND COMPANY*

*v.*

*VERNON SMITH*

### CONSOLIDATED WITH
### NO. 2004-IA-02562-SCT

*DELTA AND PINE LAND COMPANY*

*v.*

*MILTON BOYD*

*DELTA AND PINE LAND COMPANY*

*v.*

*TOMMIE GRAY*

CONSOLIDATED WITH
NO. 2004-IA-02564-SCT

*DELTA AND PINE LAND COMPANY*

*v.*

*RODNEY BURNS*

CONSOLIDATED WITH
NO. 2004-IA-02565-SCT

*DELTA AND PINE LAND COMPANY*

*v.*

*HORACE ANDERSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2004 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | STEPHEN L. THOMAS |
| | MARGARET OERTLING CUPPLES |
| | DANIELLE DAIGLE IRELAND |
| | EDWARD BLACKMON |
| | JOHN D. BRADY |
| ATTORNEYS FOR APPELLEES: | MARK THOMAS McLEOD |
| | MITCHELL HARRY TYNER, SR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/20/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. In these seven consolidated lawsuits brought by numerous farmers against Delta and Pine Land Company ("DPL"), the question presented is whether the farmers who brought suit for poor cotton crop production were required by Miss. Code Ann. Section 69-3-19 (3)(e) (1999) ("the Seed Act") to file an administrative complaint prior to bringing suit.

## BACKGROUND FACTS AND PROCEEDINGS

¶2. This appeal arises from a lawsuit filed in the Circuit Court of Holmes County on March 14, 2002, by fifty-six plaintiffs against DPL. The seven Appellees before us, along with the other forty-nine plaintiffs, are farmers who purchased and planted the "NuCotn 33B" cotton seed variety produced by DPL during the 1999 crop season. The farmers allege that the NuCotn 33B seed was "inferior seed, causing [them] to obtain cotton yields substantially less than what they would have obtained had the seed been of proper quality."

¶3. On August 11, 2004, DPL filed a number of motions in the trial court, including a Motion to Sever Plaintiffs' Claims and to Transfer Venue, a Motion to Dismiss, a Motion to Enforce Forum Selection Clause, a Motion to Enforce Limitation of Remedies Clauses, and a Motion to Dismiss Warranty Claims. On December 17, 2004, following a hearing on these motions, the circuit court entered an Order severing the plaintiffs' claims and transferring the claims of certain plaintiffs to other venues. Additionally, in each of the severed cases in which Holmes County was a proper venue, the trial court denied DPL's remaining motions but certified its denials of the motions to dismiss for interlocutory review under former

Mississippi Rule of Appellate Procedure 5(a). Thereafter, DPL filed its petitions for permission to bring interlocutory appeals, and on January 24, 2005, this Court granted DPL's petitions for permission to bring interlocutory appeals and its motions to consolidate the seven interlocutory appeals.

## DISCUSSION

¶4.     Mississippi, like many other agricultural states,[1] has adopted a Seed Act which establishes labeling requirements for agricultural seed distributed in the state. *See* Miss. Code Ann. § 69-3-1 *et seq*. The Seed Act provides that, before a consumer can sue a distributor of agricultural seed for alleged failure of the seed to perform as represented by the label or labeling, the consumer must first file an administrative complaint with the Mississippi Department of Agriculture ("MDA") "within such time as to permit inspection of the crops." Miss. Code Ann. § 69-3-19(3)(e)(i) (1999). Specifically, the Seed Act provides:

> As a prerequisite to filing a cause of action against a seedsman, a consumer who is damaged by the failure of agricultural, vegetable, flower or forest tree seed to produce or perform as represented by the label attached to such seed under the provisions of Section 69-3-5, Mississippi Code of 1972, shall make a sworn complaint against such seedsman alleging damages sustained. The complaint shall be filed with [MDA] and [MDA] shall send a copy of the complaint to the seedsman by certified mail, within such time as to permit inspection of the crops, plants or trees by the seed arbitration council or its representatives and by the seedsman from whom the seed was purchased.

---

[1]*See e.g.*, Ala. Code §§ 2-26-70, *et seq*.; Ark. Code Ann. §§ 2-23-101, *et seq*.; Cal. Food & Agric. Code §§ 52251, *et seq*.; Colo. Rev. Stat. §§ 35-27-101, *et seq*.; Ga. Code Ann. §§ 2-11-70, *et seq*.; Idaho Code §§ 22-413, *et seq*.; 710 Ill. Comp. Stat. 25/1, *et seq*.; Ind. Code Ann. §§ 15-4-11-1, *et seq*.; Tex. Agric. Code Ann. §§ 64.001, *et seq*.

4

Miss. Code Ann. § 69-3-19(3)(e)(i) (1999).[2]

¶5.    In order to enforce its provisions, the Seed Act requires a seedsman to notify

consumers of the mandatory arbitration requirement as follows:

> Language setting forth the requirement for filing and serving such complaint
> shall be legibly typed or printed on the seed packages or the analysis label
> attached to the packing containing the seed at the time of purchase by the
> consumer as follows:
>
> "NOTICE: As a prerequisite to maintaining a legal action based upon the
> failure of seed to which this label is attached to produce as represented, a
> consumer shall file a sworn complaint with the Commissioner of Agriculture
> and Commerce within such time as to permit inspection of the crops, plants or
> trees."
>
> If language setting forth the requirement is not so placed on the seed package
> or analysis label, the filing and serving of a complaint under this paragraph is
> not required.

Miss. Code Ann. § 69-3-19(3)(e)(ii) (1999).

¶6.    In compliance with this statute, each bag of NuCotn 33B sold in 1999 contained a

NOTICE TO BUYER, which provided, in pertinent part:

> The seed laws of several states including . . . Mississippi . . . require
> arbitration, conciliation or mediation of disputes based upon alleged failure of
> the seed to properly produce or perform as represented by the label or labeling
> before certain legal actions may be maintained against a seller.  A timely
> complaint . . . with the required filing fee (where applicable) must be filed with
> the Department of Agriculture, State Plant Board, Seed Commission or other

---

[2] At the time the plaintiffs' claims accrued, section 69-3-19 (3)(e) (1999) governed.  This section has since been repealed.  Section 69-3-22 became effective on July 1, 2000, and is almost identical to the former section 69-3-19(3)(e) with one major exception.  The new section broadens the scope of actions covered by the administrative complaint requirement and includes allegations of damage for failure of the seed to perform "[a]s represented by the label or labeling whether related to specific representations on the label, other information on the seed container, or conditions attributable to the quality of the seed . . . ."  Miss. Code Ann. 69-3-22 (2000).

applicable officials as required by state law within such time to allow the inspection of seed, crops, or plants by designated agency.

¶7. The plaintiffs assert that the NuCotn seed they purchased and planted in 1999 was defective, causing them to experience an abnormally low cotton yield. The complaint alleges negligence, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of express warranties, gross negligence, fraud, intentional interference with prospective economic opportunities, and tortious interference with a business relationship.

¶8. DPL contends the trial court committed error by denying its motion to dismiss. The plaintiffs assert that the trial court's denial was proper because their First Amended Complaint does not allege damage due to the failure of the seed "to produce or perform as represented by the label." Thus, the plaintiffs claim they were not required to file an administrative complaint prior to filing suit.

¶9. The issue presented by DPL is:

> Did the trial court err in failing to grant DPL's motion to dismiss the plaintiffs' claims, arising out of an alleged defect in cotton seed manufactured by DPL, for failure to comply with prerequisites to suit, where the plaintiffs failed to file administrative complaints against DPL "within such time as to permit inspection of the crops" pursuant to the Seed Act?

¶10. This appeal turns on the question of whether the plaintiffs were required by Miss. Code Ann. Section 69-3-19 (3)(e)(i)(1999) to file an administrative complaint and submit their claims against DPL to non-binding arbitration before the Commission of Agriculture and Commerce as a prerequisite to filing suit in circuit court. Our analysis begins with a review and discussion of the applicable sections of the Mississippi Seed Act. Furthermore,

6

this court employs a de novo standard of review of a trial court's grant or denial of a motion to dismiss. *See* **Harris v. Miss Valley State Univ**. 873 So. 2d 970, 988 (Miss. 2004).

¶11.   The Seed Act requires that seed container labels include certain specific representations such as the kind and variety of seeds contained, lot number, net weight, origin, percentage by weight of types of seeds and inert matter, and the like.  Miss. Code Ann. § 69-3-5 (1999).  Under the 1999 version of the statute, a consumer alleging damage "by the failure of agricultural, vegetable, flower or forest tree seed to produce or perform ***as represented by the label attached*** to such seed under the provisions of Section 69-3-5" must file a complaint with the MDA for submission of claims to the arbitration council as a condition precedent to the right to sue in court.  Miss. Code Ann. § 69-3-19(3) (e)(i) (1999) (emphasis added).

¶12.   The provision requiring the manufacturer to attach a specific notice informing consumers of the administrative complaint requirement states that complaints must be filed with the MDA only if the claims are "based upon the failure of seed to which this label is attached to produce as represented."  Miss. Code Ann. § 69-3-19(3)(e)(ii) (1999).   In fact, DPL's "NOTICE TO BUYER" placed on each bag of NuCotn 33B sold in 1999 only informed consumers that claims "based upon alleged failure of the seed to properly produce or preform ***as represented by the label or labeling***" must first be filed with the MDA. (emphasis added).

¶13.   The plaintiffs insist their claims do not allege damage by failure of the seed to produce or perform in accordance with the labeling requirement of Miss. Code Ann. Section 69-3-5.

7

Rather, they point out that the First Amended Complaint alleges claims of negligence, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of express warranties, gross negligence, fraud, intentional interference with prospective economic opportunities, and tortious interference with a business relationship. Specifically, the plaintiffs assert that DPL engaged in wrongful conduct, such as failure to maintain adequate inventory controls and procedures to assure a sufficient inventory of quality seed, failure to properly store the cotton seed inventory held for resale, and other misconduct, so as to render itself more attractive financially for a pending merger with Monsanto. Plaintiffs maintain that DPL's "NOTICE TO BUYER" and other package labeling did not contain any warranties or representations regarding these types of allegations and claims and, therefore, because their claims do not allege damage by failure of the seed to produce or perform in accordance with the labeling requirement of Miss. Code Ann. Section 69-3-5, they were not required to first file an administrative complaint with the MDA, nor were they required to submit their claims to arbitration prior to filing suit in state court.

¶14. DPL quite aggressively argues that the plaintiffs' failure to file administrative complaints with the MDA within such time as to permit inspection of the crops deprived them of the ability to investigate the crops and defend itself in these cases. DPL's inability to engage in an evidence gathering process and investigate the seed claims while the crop was still planted certainly limited the theories available to defend the claims against them.

8

¶15. However, we are bound by the words and provisions of the statutes that our Legislature enacts. The applicable provision of the 1999 version of the Seed Act specifically states that only claims relating to damage by failure of the seed to produce or perform in accordance with the labeling requirement of Miss. Code Ann. Section 69-3-5 must first be submitted to the MDA. Miss. Code Ann. Section 69-3-19(3)(e)(ii) (1999). Indeed, the current revised provision of the Seed Act, which took effect on July 1, 2000, broadens the scope of actions covered by the administrative complaint requirement to include allegations of damage for failure of the seed to perform "[a]s represented by the label or labeling whether related to specific representations on the label, **other information on the seed container, or conditions attributable to the quality of the seed** . . . ." *See* Miss. Code Ann. § 69-3-22 (2000). (Emphasis added). Under this current version of the Seed Act the plaintiffs clearly would have been required to file an administrative complaint with the MDA prior to filing suit against DPL in the circuit court. However, the 1999 version of the statute in effect at the time of the plaintiffs' claims did not include the additional language, "or conditions attributable to the quality of the seed." Plaintiffs recognize and agree that they may not pursue any claim based upon failure of the seed to perform as represented by the label. Instead, they claim their suit is unrelated to representations of the labeling. Thus, plaintiffs were not required to first file an administrative complaint prior to commencing suit against DPL.

¶16. In arguing to the contrary, DPL relies on this Court's enforcement of a cropduster statute similar to the Seed Act. Its reliance is misplaced. The cropduster statute at issue in

9

*Evans v. Boyle Flying Service, Inc*., 680 So.2d 821 (Miss. 1996) applied to negligence actions and provided a specific time limit for submission of a claim to MDA. *See* Miss. Code Ann. § 69-21-123. This Court properly enforced the statute to bar property owners' claims against a cropduster for negligent application of chemicals because the plaintiffs failed to first file notice of their claims. *Id*. at 829. However, the 1999 version of the Seed Act only required filing administrative complaints for allegations of damage based on non-conformance with Section 69-3-5 labeling representations. The 1999 Seed Act did not require administrative complaints for negligence actions, fraud actions, or any other actions outside this scope.

¶17. Finally, it is worth noting that at one point in the course of defending claims regarding NuCotn 33B, DPL agreed that the plaintiffs were not asserting any label violations. DPL defended many administrative complaints filed by plaintiffs in other NuCotn 33B disputes by arguing that "no provision exists for consumers to be allowed or required to file complaints with the Department or Council as a result of damages, other than for damages arising out of . . . label representations required by § 69-3-5." In its answer to the administrative complaints, DPL stated that the claims failed to allege damages resulting from the violation of representations made on the seed label as required by § 69-3-5. Following an unsuccessful arbitration process with the MDA, the plaintiffs proceeded to private litigation in circuit court where DPL then asserted the contrary position that the plaintiffs' claims somehow triggered the administrative complaint requirement.

¶18.    We are not persuaded by DPL's attempt to argue that the plaintiffs in this appeal were first required to file administrative complaints within time to permit inspection of the crops. According to the plain language of the Seed Act as written in 1999, the plaintiffs were only required to pursue the administrative remedies if their claims arose from damages relating to the label requirements and representations. The plaintiffs in this case do not allege label violations but rather claims of negligence, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, breach of express warranties, gross negligence, fraud, intentional interference with prospective economic opportunities, and tortious interference with a business relationship. Therefore, the circuit court properly denied DPL's motion to dismiss such claims based on the plaintiffs' failure to file administrative complaints. Any remaining factual question of whether any of the claims presented at trial wander into the area of label representations must be decided by a properly-instructed jury.

## CONCLUSION

¶19.    For these reasons, we affirm the circuit court's denial of Delta and Pine Land Company's Motion to Dismiss.


**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND GRAVES, JJ., CONCUR. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**